

FILED
OCT 10 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHOLESALE SPORTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW HENLE; LES SPORTS TRON; and JEAN H. HENLE, INC.,<br><br>Defendants. | Case No.: 18cv1341-LAB(KSC)<br><br>**ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE (RE: PLAINTIFF'S DOCUMENT REQUESTS AND INTERROGATORIES TO DEFENDANTS)**<br><br>**[Doc. No. 31.]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute. [Doc. No. 31.] In the Joint Motion, plaintiff seeks an order requiring defendants to provide further responses to document requests; produce additional documents; and provide further responses to interrogatories. [Doc. No. 31, at pp. 1-24.] For the reasons outlined below, the Court finds that plaintiff's request for an order requiring defendants to provide further responses to document requests and interrogatories must be GRANTED in part and DENIED in part.

/ / /

/ / /

1

## Background

### A. The Complaint.

The Complaint includes the following causes of action: (1) breach of written contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) trademark infringement under Federal law; and (5) unfair competition under California and Federal law; (6) unjust enrichment; and (7) declaratory relief. [Doc. No. 1, at pp. 7-12.]

Plaintiff is in the business of manufacturing and distributing sporting equipment in the United States, such as hockey sticks, helmets, jerseys, and socks. [Doc. No. 1, at p. 3.] These sporting goods and equipment are sold under the brand "Tron" or "TronX" (the "Tron brands"), and plaintiff has two registered trademarks for the name "TronX." [Doc. No. 1, at pp. 3-4.] Many of the plaintiff's products are purchased through two websites: hockeytron.com and hockeywest.com. [Doc. No. 1, at p. 3.]

On September 15, 2014, the parties entered into a written agreement entitled the "Hockey Tron Agreement." [Doc. No. 1, at p. 4; Doc. No. 5, at p. 4.] Under the agreement, defendant was granted the exclusive right to import Tron and TronX brand sporting equipment and other products and distribute them in Canada. [Doc. No. 1, at p. 4.] The agreement allowed defendant to operate independently in Canada under the name "Tron Canada." [Doc. No. 1, at p. 4.] However, defendants had to obtain approval from plaintiff to use the Tron and TronX brand names on any product not previously approved by plaintiff. [Doc. No. 1, at p. 4.] Defendants were responsible for setting up and operating separate hockeytron.com and tronsports.com websites in Canada using plaintiff's business management software for a fee "based on a percentage of the cost of the goods [defendants] imported pursuant to the Hockey Tron Agreement." [Doc. No. 1, at p. 5.]

From 2014 through the end of 2016, defendants consistently placed orders to purchase large quantities of goods from plaintiff bearing the Tron brands and distributed the purchased goods as agreed. To fill these orders, defendants obtained products

2

according to plaintiff's specifications through plaintiff's manufacturers in the United States and Asia. [Doc. No. 1, at pp. 5-6.]

The Complaint states that defendants "initially performed" under the Hockey Tron Agreement and sales expanded in Canada. However, plaintiff claims that defendants: (1) affixed the Tron brands to unapproved, inferior products; and (2) stopped paying the fees outlined in the Hockey Tron Agreement. Despite these problems, defendants continued to place orders for plaintiff's goods and continued to market and distribute them in Canada under the Tron brands. [Doc. No. 1, at p. 6.]

In the Fall of 2016, plaintiff threatened to stop filling orders for defendants because of their "non-payment of fees." [Doc. No. 1, at p. 6.] Defendants repeatedly represented they would pay, and plaintiff continued to fill orders. However, plaintiff came to believe that defendants had no intention of paying outstanding or future fees. [Doc. No. 1, at p. 6.]

The Complaint further alleges that defendants damaged plaintiff's business relationships with its vendors, and they began selling sporting equipment bearing the Tron brands but hid those sales to avoid paying fees according to the Hockey Tron Agreement. [Doc. No. 1, at p. 5.] In addition, plaintiff believes defendants entered into the Hockey Tron Agreement and thereafter began purchasing equipment with the intent to misappropriate plaintiff's good will for its own benefit. [Doc. No. 1, at pp. 6-7.]

### B. *The Counter-Complaint.*

The Counter-Complaint includes the following causes of action: (1) breach of written contract; (2) fraudulent inducement; and (3) negligent misrepresentation. [Doc. No. 5, at pp. 4-10.]

The Counter-Complaint alleges that plaintiff/counter-defendant breached the Hockey Tron Agreement "by intentionally and repeatedly selling products in Canada in contravention of the exclusivity provision," which created confusion in the Canadian marketplace and caused defendants/counter-complainants to lose sales. [Doc. No. 5, at pp. 4-5.] Defendants/counter-complainants also allege plaintiff/counter-defendant

breached the Hockey Tron Agreement by shipping inferior goods to them that did not meet product specifications, and, as a result, these goods "were incapable of being sold as first-rate goods." [Doc. No. 5, at p. 5.] Defendants/counter-claimants allege that as a result they incurred "substantial monetary damages" and injury to their business reputation. [Doc. No. 5, at p. 5.]

The Counter-Complaint further alleges plaintiff/counter-defendant failed to provide adequate support and assistance with the software defendants/counter-complainants were required to use under the Hockey Tron Agreement, and this caused monetary damages and "tremendous aggravation." [Doc. No. 5, at p. 6.] Finally, the Counter-Complaint alleges defendants/counter-complainants discovered during the evolving business relationship between the parties that plaintiff/counter-defendant failed to provide them with "truthful and accurate costing information, which inevitably led to lower than anticipated profits." [Doc. No. 5, at p. 7.] If defendants/counter-complainants followed plaintiff/counter-defendant's recommended price lists, they allege they would be operating at a loss. [Doc. No. 5, at p. 7.] Defendants/counter-complainants believe this inaccurate information was provided to them to induce them to enter into the Hockey Tron Agreement. [Doc. No. 5, at p. 8.]

## *Discussion*

### *Plaintiff's Document Requests*

As narrowed in the parties' briefing, **_Document Request Nos. 1 and 2_** seek "source documents" (*i.e.*, "invoices, bills of lading, import/export documentation, and tariff documents") evidencing defendants' sales of products with the Tron and Troy brands. These requests also seek disclosure of bank statements, but the Court sustains defendants' privacy and relevancy objections to this portion of plaintiff's requests. [Doc. No. 31, at pp. 10-17.] Without more, the Court finds that requiring defendants to produce bank statements would be too invasive, because the statements would include a significant amount of information that is both private and irrelevant.

///

Defendants object to these requests on several other grounds, but they did agree to produce spread sheets and summary documents of product sales. The requested "source documents" are directly relevant to the allegations in the Complaint and Counter-Complaint, and summary documents of product sales are not a replacement for the "source documents." Based on the allegations in the Complaint and the Counter-Complaint, it appears these "source documents" are key to resolving the dispute between the parties.

Defendants also object to these requests because they claim it would be too burdensome for them to produce the "source documents" and disproportionate to the needs of the case as production would require defendants to "devote multiple employees to spend months searching for every shred of underlying documentation for its sales, as requested." [Doc. No. 31, at pp. 4, 16-17.] However, Rule 34 only requires a responding party to "produce and permit the requesting party or its representative to inspect, copy, test, or sample" documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed.R.Civ.P. 34(a)(1)(A) & (b)(2)E(i). Thus, without more, it appears that "source documents" could be made available for plaintiff's representative to inspect and copy without the need for "multiple employees" of defendants to conduct time-consuming searches.

Based on the foregoing, counsel and the parties are directed to meet and confer to determine the most efficient way to make the requested "source documents" available for plaintiff to inspect at a mutually convenient time and at a place that does not require defendants to transport a large volume of documents away from where they are stored in the ordinary course of business. In sum, plaintiff's requests for access to "source documents" (*i.e.*, "invoices, bills of lading, import/export documentation, and tariff documents") evidencing sales of products with the Tron and Troy brands is GRANTED. Within ***10 days of the date*** this Order is entered, counsel and the parties shall meet and confer, and defendants shall explain how and where the requested "source documents" are stored and maintained. Counsel and the parties shall also discuss and agree to a

mutually convenient time and place for plaintiff's representative to inspect and copy at least a sampling of the "source documents." As noted above, defendants' objection to producing bank statements is sustained. The requested "source documents" must be made available for plaintiff's representative to inspect and copy ***no later than 30 days*** after counsel and the parties have met and conferred.

***Document Request Nos. 3 and 4*** broadly seek production of "all" documents and communications "concerning" any agreements defendants entered into "concerning" the manufacture or sale of Tron products and "all" documents and communications between defendants and "any" person "concerning" the manufacture or sale of Tron products. [Doc. No. 31, at pp. 17-27.] Defendants' main objection to these requests is that, as worded, they are so broad they would require production of "every document and communication ever created, sent or received" by defendants; would take an unreasonable amount of time and effort to produce; and "would yield a trove of irrelevant and inadmissible documents." [Doc. No. 31, at pp. 18, 24.]

In response to these requests, defendants indicated they "will" produce the following responsive documents: "Les Sports Tron, Inc., 'Supplier Contact List Tron Brand,' 'QBO Customer Export,' 'Sales of Products with Tron brand,' and 'Credits of Products with Tron brand.'" [Doc. No. 31, at pp. 18, 25, 27.] Defendants also produced some other responsive documents (about 900 in total), including "detailed spreadsheets" of "each and every single sale of Tron products made by defendants" and "select communications with customers, invoices, purchase orders, and other documents." [Doc. No. 31, at p. 22, 27.] In addition, defendants have offered to provide access "to the native versions of the spreadsheets" and "specific examples of invoices, return documents or other similar documents. . . ." [Doc. No. 31, at pp. 23, 27, 32.]

During the meet and confer process, plaintiff did discuss "the claimed burden" on defendants in producing the requested documents. However, plaintiff states that defendants were unable to substantiate their claims about the unreasonable volume of documents to be produced or the burden involved in producing those documents. [Doc.

No. 31, at p. 19.] However, it does not appear that plaintiff attempted to narrow the scope of the requests, other than to request "exemplars of the various types of documents requested," which defendants allegedly declined to provide. [Doc. No. 31, at pp. 19, 26, 32.] Given the broad wording of these requests without any limitations as to time and scope, the Court agrees with defendants that it is difficult to determine what documents should be produced in response to these requests. Based on the information provided by the parties, it is this Court's view that defendants' responses to plaintiff's discovery requests were adequate. If defendant wanted more specific responses, it should have asked more specific questions. The Court will not "rewrite a party's discovery request to obtain the optimum result for that party. That is counsel's job." *Sanchez Ritchie v. Energy*, No. 10CV1513-CAB(KSC), 2015 WL 12914435, at *3 (S.D. Cal. Mar. 30, 2015). Therefore, the Court finds that plaintiff's request for an order requiring defendants to provide further responses to Document Request Nos. 3 and 4, as worded, must be DENIED without prejudice as discussed more fully blow. Because defendants stated in the Joint Motion that they "will produce" certain documents, it is unclear whether or to what extent defendants have already produced documents as agreed. Therefore, ***within ten (10) tens of the date this Order is entered***, defendants are directed to provide plaintiff with a Declaration stating that all documents have been produced as stated and agreed in the Joint Motion.

***Document Request Nos. 6, 7, 8, 9, 10, 11, 12, 14, 15, 20, 21, 22, and 23*** are also worded so broadly that it is simply not possible for defendants or the Court to determine the appropriate scope of the documents requested. As to each of these document requests, defendants provided plaintiff with a reasonable response and agreed to produce many responsive documents. Accordingly, the Court finds that plaintiff's request for an order requiring defendants to provide further responses to Document Request Nos. 6, 7, 8, 9, 10, 11, 12, 14, 15, 20, 21, 22, and 23, as worded, must be DENIED without prejudice as discussed more fully blow.

///

7

Based on a review of the parties' 124-page Joint Motion, it is apparent that plaintiff is entitled to production of additional documents that are highly relevant to resolving the parties' dispute. It is also apparent that counsel did not meet and confer effectively or to the extent expected by the Court. Plaintiff's counsel should have attempted to narrow the scope of all the above-listed document requests. At the very least, each of these document requests should include reasonable time limitations. Although it is apparent that the parties' formal business relationship began in September 2014, when the Hockey Tron Agreement was executed, the Complaint indicates that problems between the parties did not arise until about two years later.

Defendants' counsel should have also been more cooperative in explaining: (1) the means defendants used to communicate with buyers, sellers, manufacturers, sales representatives, and others; and (2) how and where source documents and communications with buyers, sellers, manufacturers, sales representatives, and others are stored and maintained. Basic information about these topics would have helped plaintiff narrow the scope of its document requests. Diligent meet and confer discussions should have elicited this information.

Accordingly, ***within 15 days of the date this Order is entered***, the parties shall meet and confer ***again*** to attempt to informally reach agreement about the scope of documents that should be produced by defendants to help the parties resolve their dispute. If counsel and the parties cannot reach agreement ***within 15 days of the date this Order is entered***, the time for plaintiff ***only*** to complete fact discovery is extended to ***December 20, 2019***, to enable plaintiff to serve a Rule 30(b)(6) deposition notice, if necessary, to obtain information about defendants' document retention practices and procedures. Plaintiff may then serve defendants with more narrowly tailored document requests. If plaintiff elects to notice a Rule 30(b)(6) deposition, defendants shall make an appropriate witness or witnesses available in an expeditious manner. If plaintiff elects to

/ / /

/ / /

serve defendants with amended document requests, defendants shall respond to those document requests *within 20 days from the date they are served*.

***Document Request No. 19*** seeks production of invoices from defendants' suppliers of Tron or Tron-X branded products supplied to defendants in 2014, 2015, and 2016 "sufficient to show [defendants'] F.O.B. costs of those products." [Doc. No. 31, at p. 121.] Initially, defendants responded they would gather and produce all responsive documents. [Doc. No. 31, at p. 121.] However, the Joint Motion indicates defendants provided plaintiff with a supplemental response on August 12, 2019, and defendants represent that it is now unnecessary for the Court to order production as to this request. Accordingly, it does not appear there is a dispute for the Court to resolve as to Document Request No. 19, so plaintiff's request for an order compelling any further production is DENIED.

Plaintiff also complains that some of the documents already produced by defendants are either incomplete or not in a useable or readable format. The Joint Motion includes a list of the affected documents. [Doc. No. 31, at pp. 108-109.] ***Within 20 days of the date this Order is entered***, defendants shall resolve this matter by providing plaintiff with complete, useable, readable documents, as identified in the Joint Motion.

### ***Plaintiff's Interrogatories***

***Interrogatory Nos. 18, 19, 20, 21, 22.*** Initially, defendants responded they were having problems gathering the information requested in these interrogatories. Defendants represented that the requested information is electronically stored, and as they had changed systems over the past years, they needed more time to respond and would provide supplemental responses as soon as they were able to gather the requested information. In the Joint Motion, defendants represented they provided plaintiff with supplemental responses to these interrogatories on August 12, 2019. Accordingly, these matters are moot, and it is unnecessary for the Court to compel further responses. [Doc. No. 31, at pp. 112, 114, 116, 118, 119, 121.] Accordingly, defendant's request for an

order requiring defendants to provide further responses to Interrogatory Nos. 18, 19, 20, 21, 22 is DENIED.

IT IS SO ORDERED.

Dated: October 9, 2019

Hon. Karen S. Crawford
United States Magistrate Judge