

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHOLESALE SPORTS, INC., <br><br>Plaintiff,<br><br>v.<br><br>ANDREW HENLE; LES SPORTS TRON; and JEAN H. HENLE, INC.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No.: 18cv1341-LAB(KSC)<br><br>**ORDER DENYING PLAINTIFF'S REQUESTS TO RE-OPEN FACT DISCOVERY AND RE-OPEN THE DEADLINE FOR AMENDING THE PLEADINGS**<br><br>[Doc. No. 35.] |

Before the Court is the parties' Joint <u>Opposed</u> Motion Regarding Plaintiff's Request to Amend the Scheduling Order. [Doc. No. 35.] In the Joint Motion, plaintiff seeks an order re-opening fact discovery and re-opening the time for amending the pleadings. Plaintiff's reason for the request is discovery of "new evidence" believed to necessitate depositions of percipient witnesses and amendments to the Complaint. [Doc. No. 35, at p. 2.] Defendants vigorously oppose plaintiff's requests to re-open fact discovery and extend the time for amending the Complaint. [Doc. No. 35, at pp. 4-6; 16-26.] The Joint Motion is 26 pages in length and was submitted with three declarations and several exhibits totaling 65 pages.

## Background

Plaintiff is in the business of manufacturing and distributing sporting equipment in the United States, such as hockey sticks, helmets, jerseys, and socks. [Doc. No. 1, at p. 3.] These sporting goods and equipment are sold under the brand "Tron" or "TronX" (the "Tron brands"). [Doc. No. 1, at pp. 3-4.] Plaintiff "conducts a substantial portion of its sales through the internet, and primarily through two websites: hockeytron.com and hockeywest.com. [Doc. No. 1, at p. 3.]

On September 15, 2014, the parties entered into a written distribution agreement entitled the "Hockey Tron Agreement." [Doc. No. 1, at p. 4; Doc. No. 5, at p. 4.] Under the agreement, defendant was granted the exclusive right to import Tron and TronX brand sporting equipment and other products and distribute them in Canada. [Doc. No. 1, at p. 4.] The agreement allowed defendant to operate independently in Canada under the name "Tron Canada." [Doc. No. 1, at p. 4.] In addition, the agreement provided for defendants to pay plaintiff "a fee based on a percentage of the costs of the goods it imported pursuant to the Hockey Tron Agreement." [Doc. No. 1, at p. 5.] Using plaintiff's business management software, defendants were responsible under the agreement "for setting up and operating hockeytron.com and tronsports.com websites to conduct retail and wholesale business in Canada." [Doc. No. 1, at p. 5.]

Defendants consistently placed orders from 2014 through 2016. To fulfill defendants' orders, plaintiff obtained specific goods from its manufacturers. Defendants also ordered products directly from manufacturers approved by plaintiff. [Doc. No. 1, at p. 5.] Initially, sales of Tron products expanded in Canada. [Doc. No. 1, at p. 6.]

Problems with the parties' business relationship began to occur in 2016. Plaintiff threatened not to continue filling orders "based on [defendants'] non-payment of fees" and later concluded defendants had "no intention of paying outstanding fees" or fees incurred for any additional orders. [Doc. No. 1, at p. 6.] The Complaint further alleges that defendants were hiding sales of Tron products to avoid paying the contracted fee; selling goods under the brand "Troy" through a separate website; and "affixing the Tron

2

Brands to equipment not approved by [plaintiff] and of an inferior quality. . . ." [Doc. No. 1, at pp. 6-7.] In addition, the Complaint alleges defendants began "engaging in conduct that undermined the benefits [plaintiff] expected to receive under the Hockey Tron Agreement," such as damaging plaintiff's business relationships with its vendors. [Doc. No. 1, at pp. 6-7.] The Complaint alleges defendants' "fraudulent conduct . . . was intended to further their efforts to misappropriate [plaintiff's] goodwill." [Doc. No. 1, at p. 7.]

Defendants also filed a Counter-Complaint alleging that plaintiff breached the Hockey Tron Agreement "by intentionally and repeatedly selling products in Canada in contravention of the exclusivity provision," which created confusion in the Canadian marketplace and caused defendants to lose sales. [Doc. No. 5, at pp. 4-5.] The Counter-Complaint also alleges plaintiff breached the Hockey Tron Agreement by shipping inferior goods to them that did not meet product specifications and could not be sold. [Doc. No. 5, at p. 5.] In addition, the Counter-Complaint alleges plaintiff failed to provide adequate support and assistance with the software defendants were required to use under the Hockey Tron Agreement, and this caused monetary damages and "tremendous aggravation." [Doc. No. 5, at p. 6.] Finally, the Counter-Complaint alleges defendants discovered during the evolving business relationship that plaintiff failed to provide "truthful and accurate costing information, which inevitably led to lower than anticipated profits." [Doc. No. 5, at p. 7.]

### *Discussion*

A party seeking to modify a scheduling order must show "good cause." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment [of a scheduling order]. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment)." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). To justify re-opening discovery, the moving party must show it "diligently

pursued its previous discovery opportunities. . . ." *Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002). A request to re-open discovery may be denied if the parties already "had ample opportunity to conduct discovery." *Id.*

Once a Rule 16 scheduling order is entered setting a deadline for amending the pleadings, a party seeking to amend a pleading after the deadline must first satisfy Rule 16's "good cause" standard. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth*, 975 F.2d at 609. In other words, a party seeking leave to amend a pleading filed after the entry of a Rule 16 scheduling order cannot "appeal to the liberal amendment procedures afforded by Rule 15; [the party's] tardy motion [must] satisfy the more stringent 'good cause' showing required under Rule 16." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006).

In sum, for this Court to grant plaintiff's request to modify the Amended Scheduling Order, plaintiff must first establish "good cause" to re-open discovery and "good cause" to re-open the deadline for amending the pleadings. If "good cause" to re-open the deadline for amending the pleadings is established, it would then be necessary for plaintiff to file a Rule 15 motion to amend the Complaint, and that motion to amend would be considered by Judge Burns, as the District Judge assigned to the case, unless the motion is referred to the undersigned Magistrate Judge. *See* 28 U.S.C. 636(a)&(b).

As noted above, plaintiff's reason for seeking to re-open fact discovery and the deadline for amending the Complaint is that "new evidence has recently come to light." [Doc. No. 35, at p. 2.] Plaintiff submitted the Declaration of its chief executive officer in support of its contention that its discovery of "new evidence" establishes good cause to re-open discovery and re-open the time for amending the pleadings. [Doc. No. 35-2.] The Declaration first explains that the "new evidence" consists of "an e-mail string"

received by plaintiff on November 28, 2019 from one of its sales representatives, a copy of which is attached as Exhibit 1 to the Declaration. Plaintiff believes the e-mail string "shows unequivocally" that defendants are breaching the Hockey Tron Agreement "by directly soliciting not only [plaintiff's] existing customers in the United States but doing so through [plaintiff's] independent sales representatives." [Doc. No. 35-2, at p. 2.] Plaintiff believes this e-mail evidence shows defendants have been using plaintiff's distribution lines in the United States and Canada to divert orders for plaintiff's Tron products to its own line of competing Troy products. [Doc. No. 35, at pp. 8-9.] However, without more, the Court notes based on a review of Exhibit 1 that the e-mails do not clearly and unequivocally support plaintiff's contentions.

The Declaration further explains that on December 19, 2019 plaintiff began tracking additional e-mails of its employee, Pat Lovett, because of "a material drop in sales in the fall of 2019." [Doc. No. 35-2, at p. 2.] According to the Declaration, Mr. Lovett's e-mails, examples of which are attached as Exhibits 2, 3 and 4, prove he "was part of a conspiracy with defendants to defraud [plaintiff] and direct orders from [plaintiff's] customers in the United States and Canada to 'Troy' in order to avoid payment of royalties." [Doc. No. 35-2, at p. 2.] Plaintiff terminated Mr. Lovett's employment on December 24, 2019. [Doc. No. 35-2, at p. 2.]

Next, the Declaration states that plaintiff has obtained evidence indicating defendants are using the Tron website "to entice unknowing customers who wish to purchase Tron products but substituting 'Troy' products when fulfilling the orders." [Doc. No. 35-2, at p. 2.] According to the Declaration, plaintiff's representatives "ordered Tron products from California through defendant's Tron website, 'besthockey.ca.' Defendant[s] not only shipped to California, but fraudulently substituted 'Troy' products for the Tron products ordered." [Doc. No. 35-2, at p. 2.] Plaintiff believes this evidence shows defendants substituted Troy products for Tron products to "defraud" plaintiff "out of royalties" and mislead customers. In addition, plaintiff believes this evidence shows a breach of the covenant of good faith and fair

dealing. [Doc. No. 35, at pp. 8-9.] The Court notes that the Declaration does not reveal when the alleged order by plaintiff's representatives was placed or when the alleged substitution took place.

Finally, the Declaration of plaintiff's chief executive officer states as follows: "While [plaintiff] had suspected defendant was attempting to solicit our United States customers to break into the United States market and directly compete with Tron, [the subject e-mails were] the first time we had direct evidence of that fact." [Doc. No. 35-2, at p. 2.]

In opposition, defendants submitted convincing evidence in a Declaration by lead counsel with attached exhibits, which indicate that plaintiff's purported "new evidence" is "nothing new," was not "just discovered" recently, and/or would have been known to plaintiff during the normal discovery period if they completed key discovery and reviewed defendants' discovery responses. [Doc. No. 35, at pp. 18-23.] Defendants believe plaintiff "is trying to hustle a second chance at discovery."[1] [Doc. No. 35, at p. 22.]

First, defendants represent they disclosed prior to the close of discovery that they were selling Troy products in the United States. [Doc. No. 35, at pp. 4, 18.] In support of this argument, the Declaration by defendants' lead counsel represents that defendants produced copies of a customer list and a detailed sales report on May 17, 2019 disclosing that defendants were selling Troy products in the United States. Redacted versions of the customer list and sales report are attached as Exhibit D to counsel's Declaration. [Doc. No. 35, at p. 17-18; Doc. No. 35-3, at pp. 3-4, citing Ex. D, at Doc. No. 35-3, at pp. 16-17.]

---

[1] In other arguments, defendants challenge the viability of the allegations and amendments plaintiff seeks to add to the Complaint. Although these issues might be relevant to a Rule 15 motion to amend the Complaint, they are unrelated to the issue of diligence and will not be addressed herein.

6

Second, defendants contend the e-mails submitted by plaintiff from Mr. Lovett "about filling orders for plaintiff's Tron products with defendants' Troy products . . . do not show" what plaintiff contends. [Doc. No. 35, at pp. 4-5, 18.] More importantly, however, defendants point out that Mr. Lovett used plaintiff's e-mail domain (pat@wholesalesportsinc.com), and the witnesses named in defendants' initial disclosures listed Mr. Lovett as a sales representative for both plaintiff and defendants. A redacted version of defendants' initial disclosures listing Mr. Lovett as a sales representative for both plaintiff and defendants (*i.e.*, "VP Sales at WSI and VP Sales Troy Apparel, Inc.") is attached to the Declaration of defendants' lead counsel. [Doc. No. 35, at p. 5; Doc. No. 35-3, at pp. 4, 23.] Therefore, defendants contend plaintiff "clearly knew Mr. Lovett worked and made sales for both plaintiff and defendants from at least the outset of discovery, but they never took his deposition. They never took any depositions during discovery." [Doc. No. 35, at p. 5.] Alternatively, if these are "new revelations" to plaintiff, defendants contend it is because of plaintiff's "failure to review discovery responses" and/or to investigate its "suspicions" earlier, apparently failing to discover relevant information about its own employee "right under its nose the whole time." [Doc. No. 35, at pp. 21-22.]

Third, in response to plaintiff's contention that its representatives ordered Tron products from California through defendants' Tron website, "besthockey.ca," but in filling the order defendants substituted Troy products in place of Tron products, defendants point out that plaintiff did not state when this alleged substitution took place. [Doc. No. 35, at p. 19.] Defendants not only deny this occurred, they assert this "could not be a new alleged discovery." [Doc. No. 35, at p. 19.] The Declaration of defendants' lead counsel indicates plaintiff was aware as of May 2019 that the besthockey.ca website "was taken down." [Doc. No. 35-3, at p. 4.] Attached as Exhibit F to defense counsel's Declaration is a copy of a letter from plaintiff's counsel dated May 30, 2019, which states in part as follows: "It has come to our attention that the website, www.besthockey.ca, which [defendants] control, has recently been taken down." [Doc. No. 35-3, at p. 26.]

7

This letter also reminds defendants of their obligation to preserve evidence and specifically alleges defendants used the website to sell Tron goods and then "filled orders placed through that website using Troy goods." [Doc. No. 35-3, at p. 27.]

Fourth, the Declaration of defendant's lead counsel further states that plaintiff "made minimal efforts during the normal discovery period." [Doc. No. 35-3, at p. 2.] As examples, counsel's Declaration states that plaintiff did not follow up on discovery responses, did not take any depositions, and failed to provide witnesses in response to defendants' deposition notices. [Doc. No. 35-3, at p. 3.] Based on correspondence between counsel that is attached to the Declaration of defendants' lead counsel, it appears both parties essentially agreed to delay discovery with the hope of settling the case. [*See, e.g.*, Doc. No. 35-3, at p. 12 (stating "we'll agree to postpone the deposition provided you'll agree to present the WSI 30b6 witness(es) in the near term after discovery closes (if we don't settle soon)").] In this regard, the Court notes that the representations of defendants' lead counsel are consistent with plaintiff's statement that "the parties exchanged written discovery, but no depositions [were] taken" prior to the deadline for completing fact discovery. [Doc. No. 35, at p. 8.]

Based on its alleged discovery of "new evidence," plaintiff's new counsel wants to take the depositions of percipient witnesses [Doc. No. 35, at p. 2; Doc. No. 35-1, at pp. 1-2] and add two causes of action to the Complaint. [Doc. No. 35, at p. 12.] To complete depositions, plaintiff wants the Court to re-open discovery from now until May 22, 2020 (*i.e.*, for about three months). [Doc. No. 35, at pp. 2-3.] This case has been pending for more than a year and a half since the Complaint was filed on June 20, 2018. [Doc. No. 1.] The deadline for filing motions to amend the pleadings was February 25, 2019 (*i.e.*, a year ago). [Doc. No. 20, at p. 1.] On June 27, 2019, the Court issued an Amended Scheduling Order extending the fact discovery and other deadlines, because defendant Henle was recovering from surgery. [Doc. Nos. 20, 23-2, 24.] The amended deadline for completing fact discovery was November 1, 2019 (*i.e.*, about two months ago). [Doc. No. 24, at p. 1.] Even taking into consideration the three months necessary for defendant

8

Henle to recover from surgery, the parties had approximately seven (7) months to complete fact discovery in a case that does not involve a complex set of disputed facts. [Doc. Nos. 20, 23-2, 24.] The amended deadline for completing expert discovery is March 20, 2020. [Doc. No. 24, at p. 3.]

Plaintiff states in the Joint Motion that it does not want to re-open or extend the deadline for completing expert discovery or continue the final Pretrial Conference, which is scheduled for August 24, 2020. [Doc. No. 35, at p. 2; Doc. No. 24, at p. 4.] However, if the Court re-opens discovery for three months until May 22, 2020, as plaintiff requests, it would be necessary to extend all other dates and deadlines in the Amended Scheduling Order, including the final Pre-Trial Conference, to avoid prejudice to defendants. In this regard, the Court notes that potential prejudice to an opposing party "might supply additional reasons" to deny a motion seeking modification of a scheduling order even though the focus of the inquiry is the moving party's diligence and reasons for seeking modification. *Johnson v. Mammoth*, 975 F.2d at 609.

Defendants contend re-opening discovery without extending other deadlines, such as the deadlines for designating experts, completing expert discovery, and filing dispositive motions, would give plaintiff an unfair advantage. [Doc. No. 35, at p. 22.] For example, if plaintiff conducts additional discovery and amends the complaint, defendants have indicated they would like the opportunity to complete additional discovery and would also consider designating experts and filing a potentially dispositive motion. [Doc. No. 35, at p. 22-23.] Defendants specifically argue that if the Court re-opens discovery, they should be able to complete their "timely noticed 30(b)(6) deposition of plaintiff," which plaintiff delayed "under the guise of settlement progress which went nowhere." [Doc. No. 35, at p. 23.] In other words, defendants contend plaintiff's request to modify the current Amended Scheduling Order will result in significant delays in bringing the case to trial.

Under the circumstances presented, it is this Court's view that plaintiff has not established good cause for re-opening fact discovery and re-opening the deadline for

amending the pleadings. Without more, a lack of diligence is demonstrated in the record before the Court. Plaintiff has not addressed defendants' arguments or evidence indicating that it "made minimal efforts during the normal discovery period." [Doc. No. 35-3, at p. 2.] Nor has plaintiff addressed defendants' arguments of evidence indicating plaintiff knew or should have known of the "new evidence" well before the expiration of the November 1, 2019 discovery deadline, and if it did not, it was because it was not diligent in reviewing discovery responses or in completing key discovery, such as depositions, prior to the deadline. [Doc. No. 35, at pp. 18-20, 22-23.]

### *Conclusion*

Based on the foregoing, plaintiff's requests to re-open the time for completing fact discovery and to re-open the deadline for amending the pleadings are DENIED for failure to establish good cause.

IT IS SO ORDERED.

Dated: February 25, 2020

Hon. Karen S. Crawford
United States Magistrate Judge